THE ROBERTSON LUMBER COMPANY, a Corporation, v. THE CITY OF GRAND FORKS, Hans Anderson as County Auditor of Grand Forks County, N. D., and H. A. Shaw as County Treasurer of Said County.

(147 N. W. 249.)

**Special assessments — improvements — statutes — levied — benefits — proportion — measured — area — method — not sole criterion.**

1. Where the statute requires special assessments for improvements to be levied in proportion to the benefits conferred, but there is no provision as to the manner in which the benefits shall be measured or ascertained, an assessment according to the area is not necessarily invalid, provided that after a proper inspection it is found that the increased value or benefit is in proportion to that area. The area method, however, should be adopted as a means of arriving at the benefits, and not as the sole criterion thereof.

**Special assessments — levied in proportion to benefits — findings.**

2. Sec. 2801, Rev. Codes 1905, requires special assessments to be levied in proportion to the benefits conferred. The finding that a certain area will require a certain number of outlets, or can make a certain number of connections with a sewer, is not a finding of the extent to which each lot or area in a given district will be benefited by the improvement.

**Special assessment — levying — prerequisite — commissioners — inspection of property — benefit to each parcel of land — determined — list of benefits.**

3. Sec. 2801, Rev. Codes 1905, requires as a prerequisite to the levying of an assessment, that the commissioners shall personally inspect the property to be assessed, and shall not only determine the amount in which each lot or parcel of land which is sought to be assessed will be especially benefited, but shall make a complete list of such benefits. Unless these things are first done the commission has no power or authority to levy an assessment, nor has the city council the power to confirm the same. On the hearing before the board of commissioners and the city council, provided for by §§ 2802 and 2803, Rev. Codes 1905, such boards have the power to review and correct errors in judg-

ment and in computation merely. They have no power to act, and their findings are not conclusive in cases where the commissioners have not viewed the property, and have not made any specific findings of the benefits, and have adopted a method of procedure which is unwarranted by the statutes.

**Objection — urged before commissioners — city council — failure to do so is no waiver — suit in equity — tax — restraining collection of.**

4. An objection that an assessment has been made in a manner which is not warranted by the statutes is not waived by the failure to urge it before the commissioners or the city council, but may be relied upon and urged in a subsequent suit in equity to restrain the collection of the tax.

**Necessity — sewers — city council sole judge — general rule — its judgment not conclusive — sewer in good repair — outlying districts.**

5. Generally speaking, a city council is the sole judge of the necessity of sewers, and of the efficiency, durability, and adaptability of those already in existence. Its judgment, however, is not conclusive in a case where a sewer is in reasonably good repair and is adequate to carry off the sewage and drainage, both present and prospective, in the district in which it was originally constructed, and the construction of a new sewer is only necessary because of the needs of outlying districts.

**Omission of property — assessment district — valdity of assessment on each property.**

6. The omission of property within an assessment district from the assessment cannot be urged against the validity of the proceedings by one whose assessment is not increased by reason of such omission.

**Ordinance — authorized sewer construction — subsequent amendment reducing area — mistake — sewers — construction of — maps properly made and filed — contract let — sewer constructed — ordinance amended to conform — property in area covered — owners — no objection to description — decree — valid assessment.**

7. Where, after the passage of an ordinance authorizing the construction of a sewer, an amendment is introduced reducing the area of the sewer district, but by accident or mistake the ordinance as passed increases instead of reduces the area, but plats and maps are filed with the city auditor, properly describing the course of said sewer and said district, and the contract for the construction of the sewer is let in conformity therewith, and after the construction of the sewer and before the levying of the special assessment to pay therefor, the ordinance is amended so as to conform to the proposed and original amendment, a property owner whose property has at all times been included within the areas covered, and who has made no objection based upon the defect of description, either before the commissioners or the city council, is not entitled to a decree in equity setting aside and declaring invalid such assessment.

**Statute or charter — ordinances — passed by yea and nay votes — amendment — adoption of — by viva voce vote — validity.**

8. Where the statute or charter requires ordinances to be passed by a yea and nay vote, an ordinance is not invalid which is adopted with amendments by a yea and nay vote, even though such amendments may have been adopted by a *viva voce* vote merely.

**Objector — equity — special assessment — ordinance — passage of.**

9. An objector will not be heard to complain, in an equity proceeding to set aside a special assessment, that the ordinance upon which it was based was placed upon its second reading and final passage by one and the same vote. Such a proceeding is, at the most, irregular.

Opinion filed May 8, 1914.

Appeal from the district court of Grand Forks County, *Templeton, J.*

Suit to restrain the collection of a special assessment. Judgment for defendant.

Reversed.

Statement by BRUCE, J.

This suit was brought by the appellant lumber company to restrain the collection of a special assessment on block 36 of the town of Grand Forks, and which was levied to defray the cost of the construction of a trunk sewer. The validity of the assessment is challenged on the grounds: (1) That plaintiff's property was not benefited by the improvement in question; (2) that no ordinance creating and establishing the improvement district was adopted; (3) that the contract was let in violation of law; and (4) that the assessment was excessive, and was made arbitrarily, and not according to the benefits. These allegations were denied in the answer, and pleas of laches and of estoppel were interposed. The trial court affirmed the validity of the assessment, and from a judgment dismissing the action this appeal is taken. A trial *de novo* is requested.

*Scott Rex,* for appellant.

The ordinance attempting to create the sewer district involved here was and is fatally defective for want of proper description of the property intended to be included in the district; and such defect is juris-

dictional. Collier Estate v. Western Paving & Supply Co. 180 Mo. 362, 79 S. W. 947; Copcutt v. Yonkers, 83 Hun, 178, 31 N. Y. Supp. 659; 28 Cyc. 1122; Whitney v. Hudson, 69 Mich. 189, 37 N. W. 184; German Sav. & L. Soc. v. Ramish, 138 Cal. 120, 69 Pac. 89, 70 Pac. 1067; Thomason v. Cuneo, 119 Cal. 25, 50 Pac. 846; Raymond v. Cleveland, 42 Ohio St. 527; Pickton v. Fargo, 10 N. D. 469, 88 N. W. 90.

All statutory requirements must be strictly complied with, and the attempted amendment of the ordinance subsequently did not materially alter its original form and substance. No notice was given the public. Property owners have a right to appear and be heard. Council cannot validate its former void proceedings by an act of *ex post. facto* legislation. Bennett v. Emmetsburg, 138 Iowa, 67, 115 N. W. 582; Comstock v. Eagle Grove, 133 Iowa, 589, 111 N. W. 51; Mason v. Sioux Falls, 2 S. D. 640, 39 Am. St. Rep. 802, 51 N. W. 770; Morse v. Omaha, 67 Neb. 426, 93 N. W. 734; McLauren v. Grand Forks, 6 Dak. 397, 43 N. W. 710.

There was no effort to ascertain comparative values of property and benefits, either as to property omitted or property included, in levying the assessment to which objection is made. Hassan v. Rochester, 67 N. Y. 528; Simmons v. Millville, 75 N. J. L. 177, 66 Atl. 895; State, Schlapfer, Prosecutor, v. Union, 53 N. J. L. 67, 20 Atl. 894; 25 Am. & Eng. Enc. Law, 1199, and cases cited; 28 Cyc. 1162, and cases cited; Copcutt v. Yonkers, 83 Hun, 178, 31 N. Y. Supp. 659; Masters v. Portland, 24 Or. 161, 33 Pac. 540; Fraser v. Mulany, 129 Wis. 377, 109 N. W. 139; State ex rel. Scotten v. Brill, 58 Minn. 152, 59 N. W. 989; Iowa Pipe & Tile Co. v. Callanan, 125 Iowa, 358, 67 L.R.A. 408, 106 Am. St. Rep. 311, 101 N. W. 141, 3 Ann. Cas. 7; Cooley, Taxn. 3d ed. 1179.

In ascertaining benefits, the assessment commission must have knowledge of all material facts; and its determination, in order to be sustained, must be the result of a deliberate exercise of knowledge, discretion, and fairness. People ex rel. Keim v. Desmond, 186 N. Y. 232, 78 N. E. 857; State, Frevert, Prosecutor, v. Bayonne, 63 N. J. L. 202, 42 Atl. 773; 28 Cyc. 1156, 1161; Iowa Pipe & Tile Co. v. Callanan, 125 Iowa, 358, 67 L.R.A. 408, 106 Am. St. Rep. 311, 101 N. W.

141, 3 Ann. Cas. 7; Norwood v. Baker, 172 U. S. 269, 43' L. ed. 443, 19 Sup. Ct. Rep. 187.

With physical facts before it to show to the contrary, this court will not consider as a fact, that which is on its face most plainly not a fact. Bailey v. Sioux Falls, 28 S. D. 118, 132 N. W. 703; Power v. Helena, 43 Mont. 336, 36 L.R.A.(N.S.) 39, 116 Pac. 415.

This assessment is not based on benefits, but on the number of openings that a property would need to get the benefit from the sewer—the area value. It evinces a want of knowledge, deliberation, and the exercise of a proper discretion, and adapts an arbitrary basis. 28 Cyc. 1168; State ex rel. Powell v. District Ct. 47 Minn. 406, 50 N. W. 476; State ex rel. Cunningham v. District Ct. 29 Minn. 62, 11 N. W. 133; State ex rel. Wheeler v. District Ct. 80 Minn. 293, 83 N. W. 183; Hayes v. Douglas County, 92 Wis. 429, 31 L.R.A. 213, 53 Am. St. Rep. 926, 65 N. W. 482; Wright v. Forrestal, 65 Wis. 341, 27 N. W. 52; Watkins v. Zwietusch, 47 Wis. 513, 3 N. W. 35; People ex rel. Keim v. Desmond, 186 N. Y. 232, 78 N. E. 857; State, Frevert, Prosecutor, v. Bayonne, 63 N. J. L. 202, 42 Atl. 773; Pickton v. Fargo, 10 N. D. 469, 88 N. W. 90; Johnson v. Milwaukee, 40 Wis. 315; Liebermann v. Milwaukee, 89 Wis. 336, 61 N. W. 1112; Auditor General v. O'Neill, 143 Mich. 343, 106 N. W. 895; Lawrence v. Grand Rapids, 166 Mich. 134, 131 N. W. 581; Auditor General v. Bishop, 161 Mich. 117, 125 N. W. 715; Loewenbach v. Milwaukee, 139 Wis. 49, 119 N. W. 888; Chicago, M. & St. P. R. Co. v. Janesville, 28 L.R.A.(N.S.) 1160, subdiv. IX. of case note and cases cited; Cooley, Taxn. 3d ed. 1254; Kirst v. Street Improv. Dist. 86 Ark. 1, 109 S. W. 526; Essen v. Cape May, 77 N. J. L. 361, 72 Atl. 49; Hanscom v. Omaha, 11 Neb. 37, 7 N. W. 739.

*J. B. Wineman,* for respondents.

The city council had jurisdiction to levy the special assessment in question. The plaintiff at no time appeared before the city council or special assessment committee to offer objections, and it should not now be heard to complain. Poirier Mfg. Co. v. Kitts, 18 N. D. 557, 120 N. W. 558; McLain v. Nurnberg, 16 N. D. 144, 112 N. W. 243; Van-Gordon v. Goldamer, 16 N. D. 323, 113 N. W. 609.

The boundaries of the assessment district as established by the city council show a definite description of the district, including plaintiff's

property. 2 Page & J. Taxn. by Assessment, § 551; Hamilton, Special Assessment, § 606; Thomason v. Cuneo, 119 Cal. 25, 50 Pac. 846; People ex rel. Price v. Wiemers, 225 Ill. 17, 80 N. E. 46; Rogers v. Salem, 61 Or. 321, 122 Pac. 312; West Berkeley Land Co. v. Berkeley, 164 Cal. 406, 129 Pac. 281; Carlson v. South Omaha, 91 Neb. 215, 135 N. W. 1047.

The city council has the power to amend an ordinance and place it on its second reading and final passage by one and the same vote, and duly record it in its proceedings. Further, the amended ordinance was adopted and acted upon. 2 Page & J. Taxn. by Assessment, § 845; St. Louis v. Brown, 155 Mo. 545, 56 S. W. 298.

This action is not predicated on the ground of fraud, and we contend that the statute not having provided for an appeal or a review by any other body, court, or tribunal, the action of the council is final, unless attacked for fraud. State ex rel. Dorgan v. Fisk, 15 N. D. 219, 107 N. W. 191; Freeman v. Trimble, 21 N. D. 1, 129 N. W. 83; Brown v. Saginaw, 107 Mich. 643, 65 N. W. 602; Soller v. Brown Twp. Bd. 67 Mich. 422, 34 N. W. 888; Northern P. R. Co. v. Seattle, 46 Wash. 674, 12 L.R.A.(N.S.) 121, 123 Am. St. Rep. 955, 91 Pac. 245; Job v. Alton, 189 Ill. 256, 82 Am. St. Rep. 452, 59 N. E. 622; Spencer v. Merchant, 125 U. S. 345, 31 L. ed. 763, 8 Sup. Ct. Rep. 921; Duncan v. Ramish, 142 Cal. 686, 76 Pac. 663; Smith v. Worcester, 182 Mass. 232, 59 L.R.A. 728, 65 N. E. 40; Chicago & A. R. Co. v. Joliet, 153 Ill. 649, 39 N. E. 1077; Chicago & N. W. R. Co. v. Elmhurst, 165 Ill. 148, 46 N. E. 437; People ex rel. Scott v. Pitt, 169 N. Y. 521, 58 L.R.A. 372, 62 N. E. 662; Illinois C. R. Co. v. People, 170 Ill. 224, 48 N. E. 215; French v. Barber Asphalt Paving Co. 181 U. S. 338, 45 L. ed. 887, 21 Sup. Ct. Rep. 625; 2 Page & J. Taxn. by Assessment, 927; McQuillin, Mun. Ord. 820; Williams v. Eggleston, 170 U. S. 304, 42 L. ed. 1047, 18 Sup. Ct. Rep. 617; Illinois C. R. Co. v. Decatur, 147 U. S. 190, 37 L. ed. 132, 13 Sup. Ct. Rep. 293; Hager v. Reclamation Dist. 111 U. S. 701, 28 L. ed. 569, 4 Sup. Ct. Rep. 663; Parsons v. District of Columbia, 170 U. S. 45, 42 L. ed. 943, 18 Sup. Ct. Rep. 521; Hutcheson v. Storrie, — Tex. Civ. App. —, 48 S. W. 788.

The plaintiff is guilty of gross laches by its conduct in not making known to defendant the alleged defects or irregularities of which it complained, until the assessment had been confirmed by the city coun-

cil. The only objections made by plaintiff were that the assessments were in excess of the benefits derived, and therefore unjust and unfair, and this not until nearly one year after the improvements were in. Plaintiff is estopped to make objections on other grounds. Poirier Mfg. Co. v. Kitts, 18 N. D. 557, 120 N. W. 558; 4 Dill. Mun. Corp. 5th ed. 2601–2603; State, Vanatta, Prosecutor, v. Morristown, 34 N. J. L. 445; State, Ropes, Prosecutor, v. Essex Public Road Bd. 37 N. J. L. 335; State, Bogart, Prosecutor, v. Passaic, 38 N. J. L. 57; State, Ryerson, Prosecutor, v. Passaic, 38 N. J. L. 171; State, Youngster, Prosecutor, v. Paterson, 40 N. J. L. 244; State, Bowne, Prosecutor, v. Logan, 43 N. J. L. 421; State, Provident Inst. for Sav., Prosecutors, v. Jersey City, 52 N. J. L. 490, 19 Atl. 1096; State, Meday, Prosecutor, v. Rutherford, 52 N. J. L. 499, 19 Atl. 972; State, Simmons, Prosecutor, v. Passaic, 55 N. J. L. 485, 27 Atl. 909; State, Van Wagoner, Prosecutor, v. Paterson, 67 N. J. L. 455, 51 Atl. 922; Rosell v. Neptune City, 68 N. J. L. 509, 53 Atl. 199; Doughten v. Camden, 71 N. J. L. 426, 59 Atl. 16; Sears v. Atlantic City, 72 N. J. L. 435, 60 Atl. 1093; Tusting v. Asbury Bank, 73 N. J. L. 102, 62 Atl. 183; Durrell v. Woodbury, 74 N. J. L. 206, 65 Atl. 198, 75 N. J. L. 939, 70 Atl. 1100; State, Zabriskie, Prosecutor, v. Hudson, 29 N. J. L. 115; State, Charlier, Prosecutor, v. Woodruff, 36 N. J. L. 204; Hoboken Land & Improv. Co. v. Hoboken, 36 N. J. L. 540; State v. Trenton, 36 N. J. L. 499; Stetler v. East Rutherford, 65 N. J. L. 528, 47 Atl. 489; Borton v. Camden, 65 N. J. L. 511, 47 Atl. 436; Spalding v. Denver, 33 Colo. 172, 80 Pac. 127; Weaver v. Chickasha, 36 Okla. 226, 128 Pac. 305; Rogers v. Salem, 61 Or. 321, 122 Pac. 308; Evansville v. Pfisterer, 34 Ind. 36, 7 Am. Rep. 214; Johnson v. Allen, 62 Ind. 57; Taber v. Ferguson, 109 Ind. 227, 9 N. E. 723; Ross v. Stackhouse, 114 Ind. 200, 16 N. E. 501; Jenkins v. Stetler, 118 Ind. 275, 20 N. E. 788; McCoy v. Able, 131 Ind. 417, 30 N. E. 528, 31 N. E. 453; Byram v. Detroit, 50 Mich. 56, 12 N. W. 912, 14 N. W. 698; Lundbrom v. Manistee, 93 Mich. 170, 53 N. W. 161; Goodwillie v. Detroit, 103 Mich. 283, 61 N. W. 526; Atwell v. Barnes, 109 Mich. 10, 66 N. W. 583; Fitzhugh v. Bay City, 109 Mich. 581, 67 N. W. 904; Moore v. McIntyre, 110 Mich. 237, 68 N. W. 130; Walker Twp. v. Thomas, 123 Mich. 290, 82 N.

W. 48; Tuller v. Detroit, 126 Mich. 606, 85 N. W. 1080; Gates v. Grand Rapids, 134 Mich. 96, 95 N. W. 998; Nowlen v. Benton Harbor, 134 Mich. 401, 96 N. W. 450; Farr v. Detroit, 136 Mich. 200, 99 N. W. 19; Stewart v. Detroit, 137 Mich. 381, 100 N. W. 613; Shaw v. Ypsilanti, 146 Mich. 712, 110 N. W. 40; W. F. Stewart Co. v. Flint, 147 Mich. 697, 111 N. W. 352; Constantine v. Albion, 148 Mich. 403, 111 N. W. 1068; Jones v. Gable, 150 Mich. 30, 113 N. W. 577.

Even where the proceedings are attacked for irregularity, and validity is denied, but color of law only exists in their favor, plaintiff would be estopped. Palmer v. Stumph, 29 Ind. 329; Hellenkamp v. Lafayette, 30 Ind. 192; Evansville v. Pfisterer, 34 Ind. 36, 7 Am. Rep. 214; Lafayette v. Fowler, 34 Ind. 140; Muncey v. Joest, 74 Ind. 409; Logansport v. Uhl, 99 Ind. 531, 50 Am. Rep. 109; Peters v. Griffee, 108 Ind. 121, 8 N. E. 727; Taber v. Ferguson, 109 Ind. 227, 9 N. E. 723; Ross v. Stackhouse, 114 Ind. 200, 16 N. E. 501; Prezinger v. Harness, 114 Ind. 491, 16 N. E. 495; Western Paving & Supply Co. v. Citizens' Street R. Co. 128 Ind. 525, 10 L.R.A. 770, 25 Am. St. Rep. 462, 26 N. E. 188, 28 N. E. 88; McCoy v. Able, 131 Ind. 417, 30 N. E. 528, 31 N. E. 453; Vickery v. Hendricks County, 134 Ind. 554, 32 N. E. 880; Cluggish v. Koons, 15 Ind. App. 599, 43 N. E. 158.

No proper notice of any objection was timely given, and plaintiff is presumed to have assented, and it is estopped absolutely to assert the invalidity of the proceedings. Martindale v. Rochester, 171 Ind. 250, 86 N. E. 327; State, Read, Prosecutor, v. Atlantic City, 49 N. J. L. 562, 9 Atl. 759; State v. Green, 18 N. J. L. 179; State, Bowne, Prosecutor, v. Logan, 43 N. J. L. 421; State, Cunningham, Prosecutor, v. Merchantville, 61 N. J. L. 466, 39 Atl. 639; State, McKevitt, Prosecutor, v. Hoboken, 45 N. J. L. 484; Whitney Glass Works v. Glassboro Twp. 79 N. J. L. 352, 75 Atl. 756; Atwell v. Barnes, 109 Mich. 10, 66 N. W. 583; Close v. Chicago, 217 Ill. 216, 75 N. E. 479; Chandler v. Puyallup, 70 Wash. 632, 127 Pac. 293; Norman v. Spokane, 67 Wash. 630, 122 Pac. 330; Webb City ex rel. Franks v. Aylor, 163 Mo. App. 155, 147 S. W. 214.

The property in question was assessed according to the benefits and upon an equal basis, and no property was intentionally omitted. Page & J. Taxn. by Assessment, 325; Rogers v. Salem, 61 Or. 321, 122 Pac.

308; Cote v. Highland Park, 173 Mich. 201, 139 N. W. 69; Martin v. Olympia, 69 Wash. 28, 124 Pac. 214; Chicago v. McKinlock, 256 Ill. 38, 99 N. E. 858.

The necessity for laying a sewer in the city is exclusively a question for the determination of the city council. Rogers v. Salem, 61 Or. 321, 122 Pac. 308; Davis v. Litchfield, 155 Ill. 384, 40 N. E. 354; Re Twelfth Ave. 66 Wash. 97, 119 Pac. 5; Janeway v. Duluth, 65 Minn. 292, 68 N. W. 25; People ex rel. More v. County Ct. 56 Barb. 136; Mason v. Chicago, 178 Ill. 499, 53 N. E. 354; State, Green, Prosecutor, v. Hotaling, 44 N. J. L. 347; State, Frevert, Prosecutor, v. Bayonne, 63 N. J. L. 202, 42 Atl. 773; Oil City v. Oil City Boiler Works, 152 Pa. 348, 25 Atl. 549; De Gravelle v. Iberia & St. M. Drainage Dist. 104 La. 703, 29 So. 302; J. & A. McKechnie Brewing Co. v. Canandaigua, 15 App. Div. 139, 44 N. Y. Supp. 317; Re Pequest River, 42 N. J. L. 553; Lenon v. Brodie, 81 Ark. 208, 98 S. W. 979.

A time and a form are given the aggrieved party or owner when and where to correct any mistake made by the commission; and if the owner does not avail himself of such opportunity to present his objections, he is forever barred and precluded. Kirby's Digest of Statutes, §§ 5679 and 5685; Kirst v. Street Improv. Dist. 86 Ark. 1, 109 S. W. 526; Lenon v. Brodie, 81 Ark. 208, 98 S. W. 979; St. L. S. W. R. Co. v. Red River Levee Dist.; Board of Improvement Dist. v. Offenhauser, 84 Ark. 257, 105 S. W. 265; Hibben v. Smith, 191 U. S. 310, 48 L. ed. 195, 24 Sup. Ct. Rep. 88; Dickson v. Racine, 61 Wis. 545, 21 N. W. 620; Paulson v. Portland, 16 Or. 450, 1 L.R.A. 673, 19 Pac. 450.

The plaintiff not having tendered or offered to pay its just proportion of the special assessments, it is not entitled to relief in a court of equity. Board of Improvement Dist. v. Offenhauser, 84 Ark. 257, 105 S. W. 265; Board of Improvement v. Pollard, 98 Ark. 543, 136 S. W. 959; State Finance Co. v. Beck, 15 N. D. 374, 109 N. W. 357; Farrington v. New England Invest. Co. 1 N. D. 102, 45 N. W. 191; Grimmell v. Des Moines, 57 Iowa, 144, 10 N. W. 330.

Any defects or irregularities in the proceedings of the commission or of the council have been cured and validated. Session Laws, 1911, chap. 72.

Bruce, J. (after stating the facts as above).

We will first consider the first and fourth objections to the assessment, namely; (1) that appellant's property was not benefited by the improvement in question, and (4) that the assessment was excessive, and was made arbitrarily, and not according to the benefits.

According to the evidence, the property in the district was divided into three classes, the business district, the residence district, and the railroad district. In the business portion of the city there were 425 lots 25 x 140 feet in size. In the residence and railroad districts there were 1,317 similar lots. Lots abutting on the sewer were assessed both for a main and lateral sewer benefit. Lots in the business district were assessed 30 per cent higher than lots in the residence district. The railroad property (the Great Northern yards) was classed as residence property, allowance being made for the ground that would be taken up by streets and alleys if opened. Seventy-two per cent of the cost of the improvement was assessed against the railroad and residence property, and the remaining 28 per cent of the cost of the improvement was assessed against the business property. In making this latter assessment, this 28 per cent of the cost was divided by the 425 lots of 25 x 140 feet, each lot being charged its proportion of the total 28 per cent, with the exception that the lots abutting on the sewer were assessed both for a main and lateral sewer benefit, being assessed $142.18, instead of $111, which otherwise would have been their proportionate share. The question of the value of the lots and of the property was not taken into consideration, except in determining the difference in value of the three general different classes of property, namely, the business district, the residence district, and the railroad district. Generally speaking, the area method was applied, one of the commissioners testifying that "the basis was the benefits the property derived, that is, basing the number of openings that a property would need to get the benefits of the sewer,—the area value." To put the matter in another form, $89,781 had to be raised to defray the cost of improvement. Lots 25 x 140 feet in size which were located in the residence district were assessed at a flat rate of $41.88. Lots of the same size in the business district were assessed at the flat rate of $55.5 each, approximately a 30 per cent increase over the assessment of the residence property. These assessments amounted

in all to $79,150. In addition to this, and in order to make up the difference between the total cost of $89,781 and the $79,150, an additional charge for lateral benefits was levied upon property immediately adjacent to the sewer. The assessment, in short, was based, not upon the value of the property, or the increased market value thereof, but upon "the number of openings that a property would need to get the benefit from the sewer,—the area value." This resulted in lots of widely different market values being assessed the same amounts and on the same basis, and this method of assessment is attacked by the plaintiff and appellant. The assessment roll contains no list or finding of the amount each particular lot or parcel of land was benefited as required by § 2801, Rev. Codes 1905. It merely gives the amounts of the assessments, and states that they were "levied according to the benefits."

Although § 2801, Rev. Codes, 1905, requires special assessments for improvements, such as those in the case at bar, to be levied in proportion to the benefits conferred, and in no case to be in excess of such benefits, there is no provision in the statute as to how such benefits shall be measured and ascertained. Where this is the case, the weight of authority and of reason holds that an assessment according to the area is not necessarily invalid, provided that after a proper inspection it is found that the increased value or benefit to the lot is in proportion to that area. Denver v. Dumars, 33 Colo. 94, 80 Pac. 114; Rogers v. Salem, 61 Or. 321, 122 Pac. 308–314; Hamilton, Special Assessments, § 605; John v. Connell, 71 Neb. 10, 98 N. W. 457. The finding, however, that a certain area will require a certain number of outlets, or can make a certain number of connections with a sewer, is not a finding of the extent to which it is or will be benefited by that sewer. If, indeed, the area basis is to be used, it should be considered merely as one of many elements to be considered in determining benefits, and not as the sole and only test. This we believe to be the general rule throughout the country. Grand Rapids School Furniture Co. v. Grand Rapids, 92 Mich. 564, 52 N. W. 1028; People ex rel. Connelly v. Reis, 109 App. Div. 748, 919, 96 N. Y. Supp. 597; Clapp v. Hartford, 35 Conn. 66; State ex rel. Powell v. District Ct. 47 Minn. 406, 50 N. W. 476; State ex rel. Cunningham v. District Ct. 29 Minn. 62, 11 N. W. 133; State ex rel. Shannon v. District Judges, 51 Minn.

539, 53 N. W. 800, 55 N. W. 122; Loewenbach v. Milwaukee, 139 Wis. 49, 119 N. W. 888. There can be no question that it is the rule which must be complied with in North Dakota. Prior to the passage of chapter 62 of the Laws of 1905, it would seem that, as in Colorado (see Pueblo v. Robinson, 12 Colo. 593, 21 Pac. 899), an assessment could be made upon the area basis alone, and that the commissioners were not required to make any formal finding or report of the amount each lot or tract of land was benefited. See Rev. Codes 1899, art. 28; Rolph v. Fargo, 7 N. D. 640, 42 L.R.A. 646, 76 N. W. 242. In 1905, however, the legislature put itself on record as repudiating this method, and as requiring all assessments to be made on the basis of benefits, and of benefits alone. It was specific in the matter, so that there could be no evasion and no dispute. It specifically required an inspection of the lots or parcels of land by the commissioners, and it required the commissioners to make or cause to be made a complete list of *both the benefits and the assessments,* "setting forth each lot or tract of land assessed, and the amount such lot is benefited by the improvement, and the amount assessed against it." See § 2801, Rev. Codes 1905. It, in fact, required that the assessment should not be arbitrarily made, but that the actual benefits, as well as the apportionment of the assessment or cost, should be found and given, to the end that the assessment might not only be in proportion to the benefits, but that the owners of the property and the public might know the basis on which the assessments were levied, and the commission itself, and later the city council sitting as a board of review on appeal from the commission (see § 2803 Rev. Codes 1905), might have something definite before them. The finding of these facts and the doing of these things, we believe are, under the North Dakota statutes referred to, fundamental to the levying, the confirmation, and the validity of any assessment. There is, in fact, no authority to levy an assessment until the benefits have been first ascertained. Such being the case, the objection is not waived, nor is a subsequent collateral attack by means of a suit in equity to restrain the collection of the assessment precluded by the conclusions of the commissioners, or of the city council acting as a board of review on appeal, or by the fact that the specific point was not raised before such commission or such council. Without such prior finding and ascertainment of benefits, indeed, the commission and the city

council had no jurisdiction to proceed to a determination of the assessment as to each specific lot or tract to be assessed. Each class of special assessments has its required statutory procedure, and while similar they are not identical or always analogous in principle. Holdings on farm drainage benefits, for instance, as in State ex rel. Dorgan v. Fisk, 15 N. D. 219, 107 N. W. 191, are not necessarily applicable to an improvement which is made under the authority of an act which relates to the government of cities, and which provides not only that the assessment rates shall be disclosed, but that the property shall be actually inspected and the specific benefits not only found, but a list of them made and reported. Under §§ 2801 and 2803, Rev. Codes 1905, the commissioners and city council act, it is true, as boards of review, but as such they can merely correct mistakes in judgment and errors in computation committed by the commissioners while exercising the powers conferred upon them by the statute. They review and correct errors of judgment committed in levying and apportioning the assessment after the acts and findings of benefits preliminary to the levying of that assessment have been done by the special assessment commission. They have no right to act and their findings are not conclusive in cases where the commissioners have not viewed the property, have not made any specific findings of the benefits, or have adopted a method of procedure which is entirely unwarranted by the statutes, and have sought a review and confirmation of an assessment which is illegally made. The judgment, in short, of a board or commission cannot be held to be conclusive when the record shows that, as a matter of fact, no judgment or discretion has been exercised at all. Whittaker v. Deadwood, 23 S. D. 538, 139 Am. St. Rep. 1076, 122 N. W. 590, 592; Watkins v. Zwietusch, 47 Wis. 515, 3 N. W. 35; Johnson v. Milwaukee, 40 Wis. 315; Watkins v. Milwaukee, 52 Wis. 98, 8 N. W. 823; Spence v. Milwaukee, 132 Wis. 669, 113 N. W. 38.

It is really time that the courts should insist upon a greater care and a stricter compliance with the fundamental law in the case of special assessments. The real fact is that any kind of taxation by means of special assessments comes dangerously near to a violation of the constitutional provisions in regard to the uniformity of taxation and the proper protection of property and of property owners from harsh and unequal burdens. There is hardly any so-called special improvement

which does not redound to the benefit of the whole community, if indeed it benefits any one at all. Such improvements are often forced upon persons who are absolutely unable to pay for them, and who really derive no benefit whatever from their construction. Cases, indeed, are numerous where poor men have bought property and builded homes upon credit, which they would not have bought and could not have afforded to build if it were not for the cheapness of the land, and who, afterwards and because other persons have desired improvements, often merely for commercial purposes alone and to enhance the value of outlying property, have been confronted with special assessments far in excess of the original cost of the property to them. Many a mortgage has been foreclosed, not because the mortgagor and homebuilder would have been unable to pay it standing by itself, but because the added burden of unanticipated special assessments has been more than he could bear. This species of taxation has, it is true, now been so generally recognized and sustained by the courts that its validity may not any longer be questioned, but we think we are safe in saying that it never would have been sanctioned if it had not been for the fact that in all parts of the United States municipalities in the period of their youth and prodigality, and even dishonesty, had exceeded their debt limits so that unless special assessments were authorized, really necessary improvements could not be forthcoming. Its approval, indeed, has been merely due to the fact that one generation has mortgaged the interests of another. Such being the case, we believe that the least the courts can now do is to require that the statutory safeguards be at least reasonably complied with. "This species of taxation," says the supreme court of South Dakota in the case of Whittaker v. Deadwood, 23 S. D. 538, 139 Am. St. Rep. 1076, 122 N. W. 590–592, "under whatever rule, is fraught with such opportunities of confiscation and inequality that justice to property owners demands that statutes on this subject should receive a strict construction, and that every statutory requirement should be strictly complied with and construed to the end that inequalities and confiscations should be reduced to the minimum."

We have carefully examined the authorities cited by counsel for respondent, but find that they are not applicable to the statutory provisions of this state. Either the local statutes which are therein considered differ materially from our own, or there is a showing that,

though the reports of the commissioners and the assessment rolls were defective in form, the benefits had in fact been properly considered, and all of the material requirements of the law had been actually complied with. Among these cases are: Morse v. Omaha, 67 Neb. 426, 93 N. W. 734; Hennessey v. Douglas County, 99 Wis. 129, 74 N. W. 983; Northwestern & P. Hypotheek Bank v. Spokane, 18 Wash. 456, 51 Pac. 1070; Ferrall v. Spokane, 73 Wash. 200, 131 Pac. 808; Chandler v. Puyallup, 70 Wash. 632, 127 Pac. 293; Fisher v. Chicago, 213 Ill. 268, 72 N. E. 680; Gross v. People, 193 Ill. 260, 86 Am. St. Rep. 322, 61 N. E. 1012; Kankakee v. Illinois C. R. Co. 257 Ill. 298, 100 N. E. 996; LeMoyne v. West Chicago Park Comrs. 116 Ill. 41, 4 N. E. 498, 6 N. E. 48.

Appellant corporation further contends that it derived no benefit from the sewer in question, for the reason that there was already a sewer in existence, 12 inches in diameter and some 16 feet beneath the surface, which was fully adequate to the needs, both present and prospective, of its particular property and the original drainage district to drain which the first sewer was installed. If this was the case the assessment was clearly illegal, in so far as the appellant was concerned (Rogers v. Salem, 61 Or. 321, 122 Pac. 308), unless perhaps it was also shown that the outside area drained by such sewer was so connected with the property in question and sought to be taxed that the improvement of such outside area would necessarily affect the taxed area and add to its market value. See Bell v. Burlington, 154 Iowa, 607, 134 N. W. 1082. It is true that city councils are, generally speaking, the sole judges of the necessity of sewers and of the efficiency, durability, and adaptability of those already in existence. 28 Cyc. 1130; Philadelphia use of Yost v. Odd Fellows Hall Asso. 156 Pa. 105, 31 Atl. 917; Coburn v. Bossert, 13 Ind. App. 359, 40 N. E. 281; St. Joseph use of Gibson v. Owen, 110 Mo. 445, 19 S. W. 713; Michener v. Philadelphia, 118 Pa. 535–540, 12 Atl. 174; Rogers v. Salem, 61 Or. 321, 122 Pac. 308. It is also often true that though a sewer may be perfectly adequate for the drainage of the house sewage of a particular lot, it is not adequate to carry off the surface water which naturally falls upon the lot from adjoining property, and forms a pond thereon, so that a sewer beginning outside of such lot and draining the surface water at the points of its origin is necessary not merely

for the adjacent property, but for the lot itself. There must be, however, some limit to the burdens which may be placed upon property for such purposes. If the sewer already constructed upon the lot of plaintiff and appellant was in reasonably good repair, and was adequate to carry off both the sewage and drainage, present and prospective, of the lot and the *district in which it was originally constructed,* and the building of the new sewer, some 30 feet beneath the ground and some 14 feet beneath the original sewer, was only necessary because of the needs of *outlying* districts and in order that their sewers might have a proper fall, we can see no reason why plaintiff's property should be made to pay the cost of the additional improvement.

Appellants' next objection is that certain lots within the sewer district were omitted from the assessment. Whether this omission would be fatal or not depends largely upon the circumstances. The general rule seems to be that the fraudulent omission to assess property clearly liable for a portion of the cost of an improvement will invalidate an assessment but that the city council may exercise a large discretion in determining what property is benefited and hence liable to the assessment, and that the accidental omission to assess property liable cannot be urged against the validity of an assessment by one whose assessment is not increased by reason of such omission. 28 Cyc. 1162; Masters v. Portland, 24 Or. 161, 33 Pac. 540; Spalding v. Denver, 33 Colo. 172, 80 Pac. 126.

There is in the case at bar, serious doubt as to whether the lots were omitted at all, and whether the assessment that should have been levied thereon was not added to that of other contiguous property not belonging to the petitioner, but to other persons who had made no objections to the assessment. If such is the case, the petitioner can in no way be injured by the omission. It is also shown that a portion of the property claimed to have been omitted belongs to the petitioner itself, and it certainly cannot complain of its omission. The amount also of the charges which might in any event be made against the omitted property are so small that it is doubtful whether a distribution over the whole of the district would add materially to the taxes of anyone. These matters, however, can be considered on the new assessment provided for by §§ 2787 and 2788, Rev. Codes 1905, if such be made. It is sufficient for us to say that the plaintiff and appellant

was not precluded from raising the question in the equitable proceedings before us by reason of the fact that the point was not urged before the commissioners sitting as a board of review, or the city council on appeal. It might have been estopped by such failure if these bodies had had any power to consider the question. Spalding v. Denver, supra. As we have before stated, however, no legal assessment roll was made, and the commissioners acting as a board of review and the city council had nothing before them to review, or any jurisdiction over the immediate subject-mater.

We are not, however, prepared to say from the evidence before us that the property of appellant was not benefited to some extent by the improvement. It is true that the evidence seems to show that the natural drainage of the land was toward the river, so that the question of surface water would largely be eliminated. It is clear to us from the evidence that the original sewer was sufficient for the property east of Third street, or at any rate that lying north and south of De Mers avenue. The evidence, however, is undisputed that the sewer was not sufficient for the drainage of the Ontario Store, the Widlund Building, and other modern buildings which in recent years have been erected on Third street, and which discharged their sewage into the old sewer. If they were assessed, they were assessed on the basis of benefits, both present and prospective, to their property, arising from both present and prospective uses, and this would include the modern buildings above mentioned. The evidence, therefore, tends to show that the old sewer was not adequate for the old district, even though it might have been adequate for the property of appellant alone if the added sewage of the old district did not flow into it.

Such being the case, the property of appellant should bear some portion of the cost of the new improvement. We are unable, however, to determine from the record how much this should be, and the amount can only be found upon a reassessment. We have before us, indeed, no finding of benefits whatever. All we have are the assessments levied against other pieces of property; and whether those assessed were in proportion to the benefits, and, if so, in what proportion, we are totally unable to determine.

We now come to the contention of appellant that the sewer district was not legally designated, and that the ordinance is void in so far at

least as plaintiff's property is concerned.  Appellant alleges that the sewer district was attempted to be created by ordinance No. 253, which passed its first reading October 5th, 1908; that this ordinance came up for final passage on November 6th, 1908, at which meeting a petition was presented asking that the boundaries of the district be changed by striking out the line of city blocks lying between Alpha and International avenues.  The boundaries of the district as proposed in the original ordinance included all of the territory within the city, bounded on the south by Bruce avenue, on the southwest by the city limits, on the north by International avenue, and on the east by the Red River of the North, and the amendment proposed to make Alpha avenue the north boundary of the district, cutting off the city blocks north of such avenue.  This amendment was carried by a yea and nay vote.  The amendment, however, appears to have been incorrectly drafted, and to have enlarged, instead of diminished, the district, the northwesterly boundary being placed at a point on the east line of lot 2, block S, Budge and Eschelman's Second Addition, and thence along said line in a northeasterly direction to its intersection with the Red River of the North to the place of beginning.  This amendment, it appears, was incorporated in the original ordinance, and the ordinance as so amended placed upon its second reading and final passage and carried by the yea and nay vote.  It was approved by the mayor on November 10th, 1908.  Subsequently, and on the 1st day of February, 1909, the ordinance was amended by ordinance No. 258, which latter ordinance changed the number of said sewer district from sewer district No. 2 to sewer district No. 10.  Thereafter plans, estimates, and specifications were prepared by the city engineer, duly approved by the council on February 23d, 1909, and the city auditor was authorized to advertise for bids thereon.  These bids were opened by the city council on March 5, 1909, and referred to the city engineer, who reported thereon at a meeting of the council held March 16th, 1909.  At this meeting the contract for the construction of the sewer was let, and the sewer was completed on the 14th day of November, 1910.  It appears also that plans and specifications were on file in the office of the city auditor from on or about the 23d day of February, 1909, giving a full description of the proposed sewer and all real property included in the improvement district, and that there was also in his office a copy of

the resolution of the city council authorizing and directing the city engineer to prepare the same, and which resolution gave the route of the proposed sewer, specifying particularly the streets under which it was to be constructed, and which plans and specifications and resolution were open to public inspection. Later the mistake in the boundary of said sewer district was discovered, and on March 23d, 1911, an ordinance was introduced and adopted and passed May 1, 1911, and duly published on May 4th, 1911, which rectified the mistake, conforming said ordinance to the amendment actually proposed, but which was improperly drafted, and which made Alpha avenue the northerly boundary of said sewer district. Subsequently the special assessment commission of the city of Grand Forks prepared its proposed assessment to defray the cost of the construction of said sewer, and gave due notice that they would meet at the office of the city auditor of said city on August 10th, 1911, to hear any and all complaints or objections to said proposed assessment. At this time and place the plaintiff appeared and filed his objections to the proposed assessment, alleging that "such proposed assessment against the real property above mentioned (the real property of petitioner specified in said objections) is in excess of any and all benefits derived from said improvement by said property; and (2) that such proposed assessment against said real property is excessive, unjust, and unfair as compared with the proposed assessment for such improvement against other property of greater value and which receives greater benefits therefrom." These objections were overruled and the assessment confirmed, and on an appeal being taken to the city council the same objections were urged and likewise overruled. Neither before the commission nor before the city council did the petitioner make any point as to the invalidity of the ordinances, or any of them, or as to the fact of their indefiniteness in regard to the boundaries of the district, or as to the manner of the passage of the ordinance in question, nor that its property was not included in each and all of the ordinances.

Even if the petitioner can now urge points and objections which were not urged before the special assessment commissioners and the city council, there would hardly seem to be any merit in them. It is quite clear to us that the property of the petitioner was included in the descriptions of all of the ordinances, no matter how their provisions

may be construed. Counsel for petitioner alleges, it is true, that the provision, "thence along the said line in a northeasterly direction to its intersection with the Red River of the North," was fatally defective; "as the line referred to did not run in the direction of the river it is impossible to locate this course with any degree of certainty or definiteness, as such call would be satisfied with a line running anywhere from due east to due north which intersected the river." There appear, however, to have been at all times plats on file describing the district and the property affected, and petitioner could hardly have been misled. It, in fact, never raised the point until the action was brought in the district court, and it not only allowed the proceedings to go on and the sewer to be constructed without objection or raising the point, but allowed the assessment to be confirmed as to all of the other property owners. The appellant's property was included in all of the ordinances and amendments. The location and extent of the sewer was the same in all of the ordinances and was undisputed. It would have been perfectly competent for the commissioners and the council, even after they had established a sewer district, to have found that certain property therein was not benefited and to have refused to levy an assessment against the same. This is practically all that the council did in the case at bar by the amendment of May 1, 1911.

The only provisions of our statute upon the subject of sewer districts are found in §§ 2772 and 2773, Rev. Codes 1905. They are: "§ 2772. Any city shall have power to create sewer, paving, and water-main districts within the limits of such city, which shall be consecutively numbered. Section 2773. Such sewer districts shall be of such size and form as the city council, after consultation with the city engineer, shall decide most practicable for the purpose of the drainage of such portion of such city as may be included in the respective districts as established by the city council." It would seem by these statutes that the size and form of the district is a matter to be decided entirely by the council after consultation with the city engineer, and the only question in which the property owner is interested or has a right to be heard in a court of law is upon the question of benefits, and whether the assessment upon his property is a just proportion of the total benefits conferred upon all property owners.

We are ready to concede the general proposition that when municipal

corporations seek to impose upon property owners the burden of the cost of street improvements, the statute or charter which prescribes conditions precedent to the imposition of such a burden must be strictly pursued, but we find no departure from the statute in the case at bar. There is a wide distinction between requirements which relate to the nature of the improvement, its necessity and its cost, and those which relate to the spreading of the assessment. For these reasons we do not believe that the cases of Bennett v. Emmetsburg, 138 Iowa, 67, 115 N. W. 582; Comstock v. Eagle Grove, 133 Iowa, 589, 111 N. W. 51; Mason v. Sioux Falls, 2 S. D. 640, 39 Am. St. Rep. 802, 51 N. W. 770; Morse v. Omaha, 67 Neb. 426, 93 N. W. 734; McLauren v. Grand Forks, 6 Dak. 397, 43 N. W. 710,—cited by counsel for appellant,—are applicable here. They all relate to cases where the council neglected to find the necessity or cost of the improvement, or to do acts necessary and prerequisite to the letting of the contract, rather than to the assessing and distributing of the cost.

There is no merit in the objections to the manner of the adoption of the ordinances and of the amendments thereto, that the city council could not legally amend and place an ordinance upon its second reading and final passage by one and the same vote, and that the city council had no right to grant the petition for an amendment in any other manner than by a yea and nay vote. The record shows that the ordinance as amended was adopted by a yea and nay vote. The only provision of the Code upon this subject is § 2671, Rev. Codes 1905. It provides that the yeas and nays shall be taken upon the passage of all ordinances and on all propositions to create any liability against the city, or for the expenditure or appropriation of money." The amendment in question involved an amendment to an ordinance, and not the passage of an ordinance, nor, strictly speaking, did it create any liability against the city, or provide for the expenditure or appropriation of money.

As far as the objection to placing an ordinance upon its second reading and final passage by one and the same vote is concerned, we have merely to say that the procedure, at the most, was irregular, and that the courts will hesitate to interfere in such cases when no wrong seems to have been committed. The objection, then, at the most, is merely a technical one. "While it is, of course, desirable that council should

regard parliamentary law in its proceedings, an ordinance is not rendered invalid because in enacting it the council violated the rules of parliamentary law. The fact that council has adopted a parliamentary code does not prevent council from disregarding such code in specific instances, if it sees fit to do so." 2 Page & J., Taxn. by Assessment, § 845. In the case of Davies v. Saginaw, 87 Mich. 439, 49 N. W. 667, a so-called amendment, which was in effect a substitute, was adopted. The original motion as amended was not then put to a formal vote, but the council treated it as carried by the vote adopting the amendment. It was held that such action was contrary to the rules of parliamentary law, but did not render the proceeding invalid. There appears to have been no greater irregularity in the case before us. See also Landes v. State, 160 Ind. 479, 67 N. E. 189; Sedalia ex rel. Gilsonite Constr. Co. v. Scott, 104 Mo. App. 595, 78 S. W. 276; Sedalia ex rel. Gilsonite Constr. Co. v. Montgomery, 169 Mo. App. 197, 88 S. W. 1014.

The judgment of the District Court is reversed, and judgment ordered as prayed for in the complaint.